## SUPREME COUNCIL OF THE LEGION OF HONOR OF MISSOURI,' Respondent, v. PALMER et al., Defendants; PALMER, Curatrix, Appellant.

### St. Louis Court of Appeals, April 26, 1904.

1. **INTERPLEADER: Sufficiency of Bill.** Where an interpleader paid the fund into court and the case was tried on the pleadings of the rival claimants, the judgment will not be reversed at the instance of one of the rival claimants on the ground that some necessary allegation may have been omitted from the bill of interpleader.

2. ———: **Right to File Bill.** In order that the holder of a fund may file a bill of interpleader, the same debt must be claimed by hostile parties under adverse titles derived from a common source; the interpleader must be a mere stakeholder with no interest in the subject-matter, must have incurred no liability to either of. the claimants personally and must stand exposed to the risk of being vexed by two or more suits for the fund.

3. ———: ———. A bill of interpleader will not lie if the stakeholder has assumed inconsistent obligations.

4. ———: ———. In order to maintain the action, there must be doubt about the rights of the parties and a well-founded apprehension of an action by each party for the fund.

5. ———: ———. It does not matter that by reasonable inquiry the interpleader could have ascertained to whom the fund belonged, if he is in danger of being harassed by different suits, he has a right to protect himself by filing the bill.

Appeal from St. Louis City Circuit Court.—*Hon. Jesse A. McDonald,* Judge.

AFFIRMED AND REMANDED (*with directions*).

*John R. Myers* for appellant.

The bill was not filed in good faith, and filed without any attempt on part of plaintiff to ascertain the true facts.

*Charles L. Moss* for respondent.

(1) The relief which equity affords is against the vexation of two proceedings in a matter which may be settled in a single suit. Eaton on Equity, sec. 324, p. 640; 1 Mitf., Eq. Plead., 58-59; Adams Equity, p. 202; Crawford v. Fisher, 1 Hare 436; School Dist. v. Weston, 31 Mich. 35; Angell v. Hadden, 15 Ves. 244; Pfister v. Wade, 56 Cal. 43. (2) It is sufficient if conflicting claims have been made against one and he is in danger of being sued by the several claimants. Gibson v. Goldsmith, 7 Ala. 281; Farley v. Blood, 30 N. H. 354; Yardbraugh v. Thompson, 3 S. & M. 291; Bank v. Wilkinson, 4 R. I. 507; Morgan v. Marsack, 2 Mer. 107; Lowned v. Comford, 2 Ves. 299. (3) A doubt either of the facts or the law suffices. Woodmen v. Broadwell, 100 Mo. App. 655. See that case as to plaintiff's duty in this cause and also Arnold v. Bank, 100 Mo. App. 474.

### STATEMENT.

The respondent is a fraternal beneficiary association doing a life insurance business through subordinate councils. Empire Council No. 11, on January 12, 1895,

issued to Alfred Parmer, a member of said council, a beneficiary certificate for $2,000, payable on the death of said Alfred, to C. B. Smith, trustee for Henry Palmer, the father of Alfred, residing in England. Henry Palmer, the beneficiary, died prior to Alfred Palmer's death. After his father's death, Alfred Palmer did not designate a new beneficiary before his death on January 19, 1902. He was in good standing with the order when he died, with his beneficiary certificate in force.

It appears from the evidence that the Palmer family were natives of England and that Alfred, prior to coming to America, married in England; that of this marriage he had three sons, Alfred Henry, Frederick and Herbert. Of these Alfred Henry emigrated to this country and was a resident of the city of St. Louis, Missouri, at the time of his father's death. After Alfred came to America, he took up his abode in the city of St. Louis, where he married a Miss Bein and of this marriage was born Matilda Palmer, yet under age. The mother of Matilda died in the year 1887. After her death, Alfred Palmer married Ella J. Palmer, who is the curatrix of Matilda's estate, and the appellant herein. After the death of Alfred, Ella Palmer, as the curatrix of Matilda, demanded of the respondent the payment of the beneficiary certificate, claiming that Matilda was entitled to the same as the only "dependent heir of Alfred Palmer." Alfred Henry Palmer, in his own behalf and in behalf of his brothers, Frederick and Herbert, called at the office of respondent for the purpose of making claim to the beneficiary fund and disclosed to respondent his and his brothers' relationship to the deceased. He testified that the talk he had with the officers of the company discouraged him and that he told them he did not know whether he would make a claim or not. But a short time afterwards he called on Charles L. Moss, Esq., the attorney of the respondent, and consulted him in respect to his and his brothers' claim to the fund. As a result

of this consultation, the following notice was dictated by Moss and written by Alfred Henry Palmer and served on the respondent, to-wit:

"St. Louis, March 28, 1902.
"To Supreme Council L. of H.,
    "Fourth Floor Fullerton Building.
"Gentlemen:
    "About one month ago I called at your office with the view of making a claim for myself and brothers, who are Frederick Joseph and Herbert Palmer, now living in Cheltenham, England, for the amount of the beneficiary certificate which accrued and became payable at the death of Alfred Palmer, who was a member of Empire Council.
    "Alfred Palmer was our father, and I desire to file our claim as his children. I was discouraged and deterred from filing this claim by what was told me by your officials at the time of my visit to you. After thinking over the matter and considering all the facts within my knowledge, I am led to believe that myself and brothers are the only legal heirs of our father, Alfred Palmer, and therefore desire to herewith and hereby file this our claim to the moneys payable under the beneficiary certificate issued by Empire Council, and in lieu of his father named therein, who died at the home of my brother, Frederick Joseph, in Cheltenham, England; both my brothers now reside at Cheltenham, and my address is 3736A Lucky street.
                "Yours respectfully,
                    "ALFRED HENRY PALMER."

After the reception of this notice, the respondent filed its bill for an interpleader in the St. Louis circuit court, setting forth that Ella J. Palmer claimed that Matilda Palmer was the only "dependent heir of Alfred Palmer," and that she was duly appointed curatrix of Matilda's estate and as such claimed the beneficiary fund; that Alfred Henry, Frederick and Herbert Pal-

mer claimed the fund as the sole and only legitimate heirs of Alfred Palmer and that Matilda was not a legitimate heir of the said Alfred, and asked that it be permitted to pay the fund into court and be discharged, and that the adverse claimants be required to interplead for the fund.

Notice of the filing of the petition to interplead was duly accepted by the attorneys of the contesting claimants. Alfred Henry, Frederick and Herbert Palmer filed their answer alleging that they were the only legitimate heirs of Alfred Palmer and as such were entitled to the fund. Ella J. Palmer, as curatrix of the estate of Matilda Palmer, filed her answer in which she alleged that the respondent did not file its bill of interplea in good faith; that respondent's attorney and Alfred Henry Palmer had colluded together to make the claim for the purpose of enabling respondent's attorney to get a fee out of the fund and alleged that Matilda was a legitimate heir of Alfred Palmer and the "only heir dependent upon him at his death," and pleaded specially by-law (sec. 5) of the respondent order which provides:

"In the event of the death of all the beneficiaries selected by the member before the decease of such member, if he has made no other or further disposition thereof, the benefit shall be paid to the heirs of the deceased member dependent upon him, and if there be no such person or persons entitled to receive such benefit by the by-laws of the order, it shall revert to the relief fund."

The answer further alleged that Alfred Henry, Frederick and Herbert Palmer were of mature years and that neither of them was, or had been for a number of years prior to the death of Alfred, dependent upon him and they were in no event entitled to any part of the fund. Appellant in her answer also sued the respondent on the beneficiary certificate, in the usual form and prayed judgment for the full amount of the

certificate, with interest and costs. A reply was filed by respondent putting. in issue the new matter in this answer. Evidence was heard by the court, at the conclusion of which the court ordered "that the plaintiff pay the fund of two thousand dollars ($2,000) into court; that upon said fund being paid into court, the plaintiff shall stand and be discharged from all liability or obligation to the defendants on account of said fund. And it is further ordered by the court that the defendants herein interplead for said fund so paid into court." On a subsequent day, respondent paid the fund into court and filed its motion for costs and to be discharged. The motion was sustained, respondent was discharged and its attorney, Charles L. Moss, Esq., was allowed a fee of $125 for his services in the interpleader proceedings. Motions in arrest and for new trial, and also a motion to set aside the order allowing attorney's fees were filed and by the court overruled. Ella J. Palmer, as curatrix, appealed from both the judgment of the court on the interpleader proceedings and the order allowing the attorney's fee. On the hearing of the evidence, Alfred Henry, Frederick and Herbert Palmer, withdrew their answer and their claim to the fund, in open court.

GOODE, J. (after stating the facts.)—The sufficiency of the bill of interpleader is attacked in this court on the ground that it fails to show color of title to the fund in controversy in any one but Matilda Palmer; that it conclusively appears from the bill she was entitled to the fund and that the other claimants Alfred Henry, Frederick and Herbert Palmer had no interest in it because they were not dependent heirs of the insured member, while Matilda Palmer was a dependent heir. The bill does not say Matilda Palmer was a dependent heir, but only shows the fund was claimed for her as the only dependent heir by her curatrix and that her right was questioned by the English children of the

deceased on the ground that she was an illegitimate
child. But no point was made against the sufficiency of
the petition in the court below. All the claimants acted
on it as if it were sufficient, filed their interpleas and
went to trial, and the present demand that the judgment
be reversed because of insufficient allegations is unsea-
sonable. The fund was paid into court on the petition
as filed and the case was tried, not on that petition, but
on the pleadings of the rival claimants. It is out of the
question to reverse the judgment and throw the costs
on the respondent simply because some necessary al-
legation may have been omitted from its petition which
could have been supplied if the pleading had been chal-
lenged before trial. The point was ruled in Heusner v.
Mut. Ins. Co., 47 Mo. App. 336; however, we think the
petition is good after judgment.

This court has given very great consideration to
the contention of counsel for the appellant that the bill
of interpleader was not filed by the Legion of Honor
in good faith and out of fear of legal proceedings by
the different claimants of the fund, but was filed by the
attorney of that order for the purpose of obtaining a
fee out of the fund. Bills of this kind by insurance com-
panies are rather frequent and it is apparent a temp-
tation to abuse the remedy exists. They ought not to be
tolerated except when justified by the principles of eq-
uity, out of which they originally grew. We ask first,
what are the conditions on which such a bill may be
filed? The question is answered by eminent writers on
equity as follows: The same debt, fund or thing must
be claimed by hostile parties under adverse titles de-
rived from a common source; the interpleader must be
a mere stakeholder with no interest in the subject-mat-
ter, must have incurred no liability to either of the
claimants personally and must stand exposed to the
risk of being vexed by two or more suits for the fund
or other subject-matter in dispute. It is not, of course,
necessary that he shall be liable to two judgments; for

he can not be unless he has assumed inconsistent obligations, and in that instance a bill of interpleader will not lie. The essential purpose of the bill is to protect an indifferent holder of a fund or bailee of an article, from the annoyance and expense of separate actions to recover what he is willing to pay. These views are taken from 3 Pomeroy, Eq. Jur. (2 Ed.), secs. 1319, et seq., and 2 Story's Eq. Jur., chap. 20. The Legion of Honor stood ready to pay the insurance money to the rightful claimant, was without interest in the matter and the claiming parties deduced their respective rights from the same source, to-wit; the contract of the order with their deceased father.

The next question is one of fact and relates to whether the order had reasonable ground to apprehend an action by the English children, as well as by the curatrix of Matilda; for this proceeding is not maintainable unless there is a well-founded apprehension of this character. Blair v. Porter, 13 N. J. Eq. 267. Much insistence is laid by appellant's counsel on the fact that Matilda and no one else is entitled to the fund and the order was in no danger of having to pay it to any one but her. This is true in every case where a bill of interpleader lies. The remedy proceeds on the assumption that while two or more persons claim, only one is entitled. There must be doubt about the rights of the parties and a sufficiently vigorous assertion of a right by each, to put the indifferent stakeholder in danger of paying the fund to the wrong party if he decides the matter himself, and in danger of being sued by all the parties if he takes no step. The circumstances connected with this case, though they do not leave the appellant's position without plausible support, have failed to convince us the petition was filed for a purpose ulterior to its averred one. That question was passed on by the trial judge and his conclusion should have weight with us, as the evidence might reasonably lead to either conclusion as to what the truth is. It is certain that

two of the older children, Herbert and Frederick, who resided in Cheltenham, England, corresponded with Mr. H. J. Bliss, an attorney of this city, with respect to their interests and entrusted them to his care, and that their brother Alfred, who resided in St. Louis, followed their lead. On further investigation of the case, but not until after an order to interplead had been entered, an answer filed in behalf of those English children and depositions taken in support of the answer, Mr. Bliss advised the withdrawal of their claim, and it was withdrawn at the hearing of the case below. We find little, if anything, in the record to indicate that the two sons who were in England had any other intention prior to receiving that advice, than to press their demand. They surely had that intention when the order filed its petition. The main source of the suspicion entertained concerning the good faith of the proceeding, appears to be interviews that occurred between Alfred Henry Palmer and the attorney of the order before the bill was filed. The theory of appellant's counsel is that said attorney prompted said Alfred to assert a claim; and it is true that son said on the witness stand that the attorney told him he thought the English heirs had a claim. But Alfred did not call on the attorney of the order at the latter's suggestion, but on his own motion. At their first interview he said he did not know whether he and the English heirs would assert a claim or not. He afterwards refused to disclaim, as the evidence goes to show that Mr. Moss, attorney for the order, insisted he should. In this predicament Mr. Moss prepared a notice of claim and Alfred Henry signed it. It should be remembered that the two brothers in Cheltenham had employed Mr. Bliss and their interests were in his hands before these interviews between Mr. Moss and Alfred Henry Palmer occurred. In the light of those facts we think it sufficiently appears that the Legion of Honor was threatened with proceedings for the fund by the different heirs to preclude us from overruling the decision

of the lower court on the question. It is contended Matilda Palmer's right was clear and that by reasonable inquiry the order could have ascertained it was. That is not the important point. If the order was in danger of being harassed by different suits, it had a right to protect itself against that expense and trouble by filing this bill and compelling the claimants to litigate the matter between themselves. 2 Pomeroy, supra.

The judgment is affirmed and the cause remanded with directions to the circuit court to award and cause to be paid to Ella J. Palmer, curatrix of Matilda Palmer, the fund of $2,000, less attorney's fee of $125, allowed by the circuit court, and the additional attorney's fee of $50 allowed by this court, and to render judgment that she recover of and from Alfred Henry, Frederick Joseph and Herbert Palmer her costs expended in the circuit court, including the fee of $125 allowed the plaintiff's attorney by the circuit court, and to award execution therefor. *Bland, P. J.,* and *Reyburn, J.,* concur.