UNITED RAILWAYS COMPANY OF ST. LOUIS, Appellant, v. JOHN J. O'CONNOR et al., Respondents.

St. Louis Court of Appeals, November 29, 1910.

1. BILL OF INTERPLEADER: Grounds. The essential purpose of a bill of interpleader is to protect the indifferent holder of a fund or the bailee of an article from the annoyance and expense of separate actions to recover what he is willing to pay; and the bill lies when the same fund, debt, or thing is claimed by hostile parties through adverse titles derived from a common source, provided the interpleader is a mere stakeholder, with no interest in the subject-matter, and has not incurred any liability to either of the claimants personally.

2. ———: ———: Exclusive Right to Fund in One Defendant. Where it appears from a bill of interpleader that one defendant has a valid right to the fund and it appears affirmatively that the other defendant is without any right thereto, no ground for the bill exists.

3. ATTORNEY AND CLIENT: Attorney's Lien: Settlement of Case: Statute. Under section 965, Revised Statutes 1909, where a settlement of a cause of action is effected with the client,

without the written consent of the attorney, after notice of the attorney's contract and lien, a cause of action arises in favor of the attorney, which may be enforced against the party settling by a suit at law for the percentage of the settlement stipulated for in the contract of employment.

4. ———: ———: ———: ———: Right of Client to Settle. Notwithstanding the attorney's lien statute, the client may settle his case, for, in the interest of the peace and repose of society, the law encourages the compromise of litigation.

5. ———: ———: ———: ———. Under sections 964 and 965, Revised Statutes 1909, where a plaintiff made a settlement without the consent of his attorney, who had given the required notice, and agreed to pay his attorney out of the money received, the settlement liquidated the cause of action and fixed the attorney's right of recovery against defendant in the action at the percentage stipulated in the contract of employment.

6. ———: ———: Discharge of Attorney: Rights of Client. Notwithstanding the attorney's lien statute, a client may, for sufficient cause, discharge his attorney, and it may be, under proper circumstances, the lien of a recreant so discharged would be forfeited.

7. PLEADING: Demurrer to Petition: Allegations to Be Taken as True. The court, on demurrer to a bill of interpleader, must take the averments thereof as importing verity.

8. ATTORNEY AND CLIENT: Attorney's Lien: Discharge of Attorney: Employment of Other Attorneys: Interpleader's Bill: Sufficiency. A bill of interpleader by one against whom a suit had been instituted and who had settled the case with the plaintiff, without the consent of the attorney who tried the suit, to determine its liability as to said attorney and other attorneys who claimed to have a lien on the plaintiff's cause of action, alleged that an attorney instituted a suit for the plaintiff for damages; that he and his client had entered into a contract fixing his compensation at one-half of the amount of the recovery; that he had served the defendant with notice of his attorney's lien, as required by section 965, Revised Statutes 1909; that the client attempted to discharge him, but did not allege that she actually did discharge him; that the client entered into an agreement with other attorneys whereby she agreed to pay them one-half of the amount recovered by her, and that said attorneys claim a lien on the fund arising from the settlement of the case made by the client with the defendant, but did not allege that such attorneys were employed for the purpose of performing any services with respect to the cause of action on which the first attorney had insti-

153 App—9

tuted suit; that the client settled the case with defendant, and that the attorney first employed and those subsequently employed assert and claim a lien on the proceeds arising out of said settlement, and that said claims are identical and for the same sum and are not independent. *Held,* that defendant could not maintain a bill of interpleader to determine its liability to the several attorneys, because, under the facts stated, it was liable to the attorney who instituted the suit, since the bill alleged only an attempt on the part of the client to discharge him, and not that he was actually discharged for good cause, and since the bill did not contain pointed allegations that the other attorneys performed services for the client under an agreement with her for compensation touching the identical cause of action on which the first attorney had instituted suit.

9. ———: ———: ———: **Effect of Employing Other Attorneys.** Under the attorney's lien statute, where a client enters into a contract with an attorney for a percentage of the amount recovered, such contract, by operation of law, amounts to an assignment to the attorney of the amount stipulated for therein, and the client can confer no rights on others touching the same, unless it would be in the case where such attorney was discharged for good cause and a new employment of other attorneys was made about the same subject-matter.

10. **PLEADING: Demurrer to Petition: Inferences.** Inferences are not indulged in aid of a petition challenged by demurrer as they are after judgment when no demurrer has been interposed.

11. **BILL OF INTERPLEADER: Requisites.** A bill of interpleader should show not only the willingness of plaintiff as stakeholder to render the debt or duty to the rightful claimant, but it should show that he is ignorant or in doubt which is the rightful claimant, and that he is in danger, by reason of such doubt, from their conflicting demands, and where it shows on its face that one of the claimants is certainly entitled to the fund as against the other claimant, it is insufficient on demurrer.

Appeal from St. Louis City Circuit Court.—*Hon. Moses N. Sale,* Judge.

AFFIRMED.

*Boyle & Priest* for appellant.

(1) The plaintiff's bill of interpleader should be sustained upon purely equitable grounds, in order to

relieve the plaintiff of the necessity of contesting two separate and distinct law suits, the issue in both of which would be the same.

*John J. O'Connor pro se.*

(1)  The conditions necessary to justify a resort to a bill of interpleader are, The same debt fund or thing must be claimed by hostile parties under adverse titles derived from a common source; the interpleader must be a mere stakeholder with no interest in the subject-matter; he must have incurred no liability to either of the claimants personally; He must stand exposed to the risk of being vexed by two or more persons for the fund or subject-matter in dispute; and, he must not have assumed inconsistent obligations to the different claimants.  If either of these conditions are lacking the bill will not lie.    Sup. Council L. of H. v. Plumber, 107 Mo. App. 163; 3 Pomeroy Eq. Jur. (2 Ed.), sec. 1319; 2 Story's Eq. Jur., chap. 20.    (2)  Where one is indebted to one of two persons, but does not know which of them the law requires him to pay, he may secure the advice of a lawyer to aid him in determining which of the two he should pay.  But he has no right to ask a court of equity to act as his attorney, and that too, at the cost of his creditors.  In such a case the debtor in making the payment must "protect himself as best he can," for a court of equity will not, in such a case, perform the functions of a legal adviser. Hartsook & Home v. Chrissman, 114 Mo. App. 561; Sullivan v. K. of F. M., 73 Mo. App. 45; Kersey v. O'Day, 173 Mo. 560; Funk v. Avery, 84 Mo. App. 494.

STATEMENT.—The court declared the petition for defendants to interplead insufficient on the demurrer of defendant John J. O'Connor, and plaintiff prosecutes an appeal from that judgment. .Omitting formal matter and signatures, the petition is as follows:

"Comes now the plaintiff in the above entitled cause and states that it is a corporation duly organized and existing under and by virtue of the laws of the State of Missouri; that defendants, John E. Bishop and Thomas A. Cobbs, are co-partners doing business under the firm name and style of Bishop and Cobbs; that all of the defendants above named are duly licensed and practicing attorneys in the city of St. Louis and State of Missouri.

Plaintiff states that one Mary Harrigan instituted a suit against this plaintiff in the circuit court of the city of St. Louis, Missouri, on account of certain alleged injuries which she claimed to have sustained through the alleged negligence of this plaintiff, and that said suit was numbered 44,406, and was assigned to Division No. 3 of said circuit court of the city of St. Louis; that said Mary Harrigan employed the defendant John J. O'Connor to institute said suit for her and that said O'Connor drew the petition in said suit and instituted the same in this court, attended the taking of depositions therein and performed various other services. That in consideration of O'Connor's services said Mary Harrigan agreed to pay him fifty per cent of the amount she recovered from this plaintiff.

Plaintiff further states that said O'Connor served it with a notice of his attorney's lien in accordance with the contract theretofore entered into between said O'Connor and said Mary Harrigan.

Plaintiff further states that thereafter said Mary Harrigan attempted to discharge said O'Connor, but said O'Connor notified this plaintiff that the services he rendered said Mary Harrigan had not been paid for and that he still retained his lien on the alleged cause of action of said Mary Harrigan.

Plaintiff further states, upon information and belief, that said Mary Harrigan also entered into an agreement with the defendants Albert E. Hausmann, John E. Bishop and Thomas A. Cobbs, whereby said Mary Harrigan agreed to pay said Bishop and Cobbs and Haus-

mann fifty per cent of the amount recovered by her, and that said Bishop & Cobbs and Hausmann claim a lien on the alleged cause of action of said Mary Harrigan.

Plaintiff further states that said Mary Harrigan afterwards fully and forever released, acquitted and discharged this plaintiff on account of the alleged matters and things set forth in her petition in said cause, in consideration of which plaintiff paid her the sum of five hundred dollars.

Plaintiff further states that the defendants John E. Bishop, Thomas A. Cobbs and Albert E. Hausmann have rendered certain legal services to the said Mary Harrigan, but the exact nature of which plaintiff does not know.

Plaintiff further states that said John J. O'Connor and the said Thomas A. Cobbs and John E. Bishop and Albert E. Hausmann have each and all been asserting and claiming a lien on the proceeds arising out of the settlement of the alleged cause of action of said Mary Harrigan, which said claims of John E. Bishop, Thomas A. Cobbs and Albert E. Hausmann are conflicting with the said claim of John J. O'Connor, and that it cannot, without hazard, determine to which of the claimants it should pay the fund.

Plaintiff further states that it has no interest whatever in the claims of said Bishop & Cobbs and Hausmann and said John J. O'Connor, and is ready and willing at all times to pay a sum equal to fifty per cent of said sum of five hundred dollars, which was paid to the said Mary Harrigan in settlement of her claim, to-wit, the sum of two hundred and fifty dollars into this court and be re-leased from the claims of said Bishop & Cobbs and Hausmann and the said John J. O'Connor.

Plaintiff further states that the claims of said Bishop & Cobbs and Hausmann, and said John J. O'Connor, are identical and are for the same fund, and are not independent.

Plaintiff further states that it is not making any claim to the sum to which said lien attaches and that it is not acting in collusion with or favoring said Bishop & Cobbs and Hausmann or the said John J. O'Connor, or either or any of them.

Plaintiff further states that it is unacquainted with the actual facts involved in the said controversy between said Bishop & Cobbs and Hausmann and said John J. O'Connor and that it is being sued by each and all of them; that said Bishop & Cobbs and Hausmann have instituted a suit against this plaintiff on account of the matters and things hereinbefore set out, which suit is now pending in Division No. 1 of the circuit court of the city of St. Louis, Missouri.

Plaintiff further states that the said defendant, John J. O'Connor, has instituted a suit against this plaintiff on account of the matters and things hereinbefore set out, which suit is now pending before George P. Reichmann, justice of the peace within and for the Seventh District of the city of St. Louis, Missouri, which court is inferior to the jurisdiction of this court. That neither of said suits have been reduced to a judgment.

Plaintiff further states that it has not incurred any independent liability to any of the defendants herein, on account of the matters and things herein set out.

Plaintiff further states that it has heretofore employed counsel to make investigation of the matters and things hereinbefore recited with a view to determining, if possible, the respective rights of the parties, in order that a proper payment and disposition of the sum might be made and that both plaintiff and its legal counsel have been for some time engaged in said investigation.

Plaintiff further states that in effecting a compromise of her alleged cause of action with said Mary Harrigan, she agreed to pay her lawyers their fees and this plaintiff made no agreement to pay said lawyers.

Plaintiff further states that said Mary Harrigan is insolvent and has failed and refused to pay the said

Bishop & Cobbs and Hausmann and the said John J. O'Connor their fees and that this plaintiff recognizes its statutory liability for the same in a sum equal to fifty per cent of said five hundred dollars.

Plaintiff further states that it has no complete or adequate remedy at law, and that if both said suits of Bishop & Cobbs and Hausmann, and John J. O'Connor, are prosecuted, plaintiff will be subjected to two vexatious suits arising out of the same cause of action or demand.

Wherefore, plaintiff prays for leave to pay into court the sum of two hundred and fifty dollars and that the said Bishop & Cobbs and Hausmann and the said John J. O'Connor be ordered to interplead for the same and that plaintiff be released from all claims on the part of said Bishop & Cobbs and Hausmann and the said John J. O'Connor, or either of them, against this plaintiff on account of their said liens; that plaintiff be allowed out of said sum a reasonable attorney's fee for the investigation of the matters hereinbefore recited and for the preparation and filing of this bill of interpleader.

Plaintiff further prays that the said Albert E. Hausmann and Bishop & Cobbs be enjoined and restrained from prosecuting said suit in the circuit court of the city of St. Louis, Missouri, and that the defendant John J. O'Connor be enjoined and restrained from prosecuting said suit before George P. Reichmann, justice of the peace aforesaid, and plaintiff prays for its costs and for such other and further relief as to the court may seem meet and proper."

NORTONI, J. (after stating the facts).—The essential purpose of a bill of interpleader is to protect an indifferent holder of a fund or bailee of an article from the annoyance and expense of separate actions to recover what he is willing to pay. Under the equitable principles which obtain, such a bill will lie when the same debt, fund or thing is claimed by hostile parties through adverse titles derived from a common source.

But the interpleader must be a mere stakeholder with no interest in the subject-matter and it must appear he has incurred no liability to either of the claimants personally. In such circumstances the remedy is available to one who stands exposed to the risk of being vexed by two or more suits for the fund or other subject-matter in dispute. It is not necessary, however, that the stakeholder shall be liable to two judgments, for he cannot be so liable unless he has assumed inconsistent obligations and, in that event, a bill of interpleader will not lie. [4 Pomeroy's Eq. Jur. (3 Ed.), secs. 1319, 1320, 1321, 1322, 1323, 1324, 1325, 1326, 1327; Supreme Council of Legion of Honor v. Palmer, 107 Mo. App. 157, 194, 80 S. W. 699.] In view of these principles, it is argued for plaintiff that the court erred in sustaining defendant O'Connor's demurrer for the reason the bill discloses plaintiff to be a disinterested holder of the fund, $250, which it is anxious and willing to pay over to the rightful claimant and that it has placed itself under no liability to respond independently to either one of the defendants. It is said, too, that it recognizes its liability to some one and the only question about which a controversy is to be had pertains to the rights of O'Connor, on the one part, and Bishop & Cobbs and Hausmann on the other, with respect to which question plaintiff is entirely neutral and unconcerned. The argument suggested entirely overlooks the fact that plaintiff may have assumed an obligation to one of the defendants by conduct, though no express promise was made, and that the right of such defendant as a result of this obligation may appear to the exclusion of the other beyond doubt. In other words, the argument overlooks the fact that it may appear one defendant has a valid right to the fund and affirmatively appear as well that the other is without any right touching the matter whatever. In such circumstances, no grounds for the bill exist as the matter of right presents no question of doubt sufficient to invoke the aid of a court of equity. [Woodmen of the

World v. Wood, 100 Mo. App. 655, 75 S. W. 377; 4 Pomeroy's Eq. Jur. (3 Ed.), sec. 1328; Shaw v. Coster, 8 Paige (N. Y.) 339-347, 348; Story's Eq. Jur., sec. 821; Beach's Mod. Eq., sec. 148; Parker v. Barker, 42 N. H. 78, 93; 23 Cyc. 25, 26; 11 Ency. Pl. and Pr. 461, 468; Bassett v. Leslie, 123 N. Y. 396; Crass v. Memphis, etc., R. R. Co., 96 Ala. 447, 11 So. 480; Starling v. Brown, 7 Bush. (Ky.) 164.]

To a complete understanding of the whole matter, it will be necessary to refer to our statutes giving attorneys a lien on the claim or cause of action of their client for compensation, as plaintiff's petition for an interpleading must be interpreted under the influence of those statutes and the adjudications which they have entailed.   The statutes referred to are as follows:

"The compensation of an attorney or counsellor for his services is governed by agreement, express or implied, which is not restrained by law.   From the commencement of an action or the services of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches to a verdict, report, decision or judgment in his client's favor, and the proceeds thereof in whosesoever hands they may come; and cannot be affected by any settlement between the parties before or after judgment."   Sec. 964, R. S. 1909.

"In all suits in equity and in all actions or proposed actions at law, whether arising *ex contractu* or *ex delicto,* it shall be lawful for an attorney at law either before suit or action is brought, or after suit or action is brought, to contract with his client for legal services rendered or to be rendered him for a certain portion or percentage of the proceeds of any settlement of his client's claim or cause of action, either before the institution of suit or action, or at any stage after the institution of suit or action, and upon notice in writing by the attorney who has made such agreement with his client, served upon the defendant or de-

fendants, or proposed defendant or defendants, that he has such an agreement with his client, stating therein the interest he has in such claim or cause of action, then said agreement shall operate from the date of the service of said notice as a lien upon the claim or cause of action, and upon the proceeds of any settlement thereof for such attorney's portion or percentage thereof, which the client may have against the defendant or defendants, or proposed defendant or defendants, and cannot be affected by any settlement between the parties either before suit or action is brought, or before or after judgment therein, and any defendant or defendants, or proposed defendant or defendants, who shall, after notice served as herein provided, in any manner, settle any claim, suit, cause of action, or action at law with such attorney's client, before or after litigation instituted thereon, without first procuring the written consent of such attorney, shall be liable to such attorney for such attorney's lien as aforesaid upon the proceeds of such settlement, as per the contract existing as hereinabove provided between such attorney and his client." [Sec. 965, R. S. 1909.]

Plaintiff owns and operates a street railway system in the city of St. Louis and it appears from the allegations of the bill of interpleader that Mrs. Harrigan received an injury through its alleged negligence. Because of this injury, a claim or cause of action accrued in her favor and she employed defendant John J. O'Connor as her counsel to prosecute the same against the railways company. In employing the counsel, Mrs. Harrigan contracted in writing to pay him fifty per cent of whatever amount might be obtained on her claim or cause of action by either suit or compromise and of this contract defendant O'Connor notified plaintiff, to the end of affixing his right for compensation from it though the claim or cause of action might eventually be settled with Mrs. Harrigan without his written consent. It appears, too, from the bill that defendant

John J. O'Connor, in compliance with his contract to that effect, instituted a suit against plaintiff on the claim or cause of action referred to and that this suit was subsequently settled by plaintiff with Mrs. Harrigan by paying to her five hundred dollars without first having obtained the consent of defendant O'Connor. But it is averred in the bill Mrs. Harrigan agreed to pay the fees of her counsel. The statute substantially provides that if a settlement be made with the attorney's client, after notice of his contract and lien, as in the circumstances of this case, the right of the attorney to enforce his lien for the amount agreed upon shall not be affected thereby. It is the rule of decision under the second section of the statute quoted (sec. 965) that by effecting a settlement with the client, after notice of the lien, without the written consent of the attorney, a party operates a cause of action to arise in favor of the attorney which may be enforced against him by a suit at law for the precentage of the settlement stipulated for in the contract of employment. [Yonge v. St. Louis Transit Co., 109 Mo. App. 235, 84 S. W. 184; O'Connor v. St. Louis Transit Co., 198 Mo.622, 97 S. W. 150; Taylor v. St. Louis Transit Co., 198 Mo. 715, 97 S. W. 155.]

The allegations of the bill of interpleader reckoned, in a measure, with the statutes above quoted, for they proceed to aver and concede a liability to some one in the amount of $250, which is fifty per cent of $500, the amount for which the claim or cause of action of Mrs. Harrigan is said to have been settled. Notwithstanding the attorney's lien statutes, plaintiff was free to settle her case against the street railroad company; for in the interest of the peace and repose of society the law encourages the compromise and adjustment of litigation. But though she was free to settle the controversy with the present plaintiff without the written consent of her counsel, the rights of O'Connor, the attorney, were not disturbed by the settlement. Accepting the averments of the bill as importing verity, as we must on demurrer,

it appears Mrs. Harrigan agreed in the settlement to pay her counsel out of the five hundred dollars she received. This being true, the settlement liquidated the entire cause of action and fixed O'Connor's right of recovery against the present plaintiff at the amount of $250 or fifty per cent of that paid by Mrs. Harrigan for her and her counsel as well. [Curtis v. Metropolitan Street Ry. Co., 118 Mo. App. 341, 354, 94 S. W. 762; s. c., 125 Mo. App. 369, 102 S. W. 62.]

From the averments in the bill, when considered under the influence of the statutes and decisions referred to, it is obvious that it discloses on its face a valid and enforcible obligation in favor of defendant O'Connor against plaintiff to the amount of $250, unless other averments therein show his right to have been divested or otherwise destroyed. In other words, it appearing that O'Connor actually instituted the suit for his client under contract for fifty per cent, served notice on plaintiff to that effect, and that it afterwards settled the cause of action with Mrs. Harrigan without his written consent, its conduct raised an obligation under the law on its part to pay O'Connor fifty per cent of the amount, or $250. On the face of the bill, this obligation is to be declared as a liability of plaintiff to defendant O'Connor, unless other averments show him to have had no right in the premises at the time the settlement was made. It is averred in the bill that Mrs. Harrigan attempted to discharge her attorney, O'Connor, before the settlement was made, however, and it is averred, too, that even after this O'Connor notified plaintiff his fees were unpaid and that he still claimed his lien for compensation. But there is no averment that Mrs. Harrigan did discharge O'Connor as her counsel so as to divest his lien or right of recovery against plaintiff. We entertain no doubt that, notwithstanding the attorney's lien statutes, a client may, for sufficient cause, discharge counsel, and it may be under proper circumstances the lien of a recreant so discharged may be forfeited. But there is

no averment in the bill before us that Mrs. Harrigan discharged O'Connor or that she had any cause to so do. There is no suggestion that he was recreant to his trust. The bill avers only that she attempted his discharge and in the absence of averments to the effect that he was actually discharged and setting forth good cause therefor, it appears from the bill that O'Connor continued as counsel for Mrs. Harrigan at the time the settlement was made with her.

The allegations in the bill pertaining to the other attorneys do not import any right whatever in them to the fund referred to as against defendant O'Connor, for those allegations omit to suggest that those attorneys were employed by Mrs. Harrigan with respect to the claim or cause of action on which O'Connor had instituted the suit. It is averred, substantially, upon information and belief, that Mary Harrigan also entered into an agreement with defendants Albert E. Hausmann, John E. Bishop & Thomas A Cobbs, whereby Mrs. Harrigan agreed to pay Bishop & Cobbs and Hausmann fifty per cent of the amount recovered by her and that said attorneys claim a lien on the fund arising from the settlement of the alleged cause of action of Mrs. Harrigan. Not a word in this allegation suggests that Mrs. Harrigan employed these attorneys for the purpose of performing any service for her with respect to the cause of action on which O'Connor had instituted a suit. So far as the allegations of the bill touching this matter are concerned, it may be Mrs. Harrigan employed the several attorneys last referred to for the purpose of performing legal services as to an entirely different matter and agreed to give them a lien on the indentical fifty per cent of her cause of action against plaintiff on which O'Connor had instituted the suit, for it is not averred these attorneys claim their lien under the statutes quoted. The bill avers, too, that Bishop & Cobbs and Hausmann rendered certain legal services to said Mary Harrigan but plaintiff avers that it is not familiar with the

exact nature of such services. Not a word in this aver-
ment suggests that the attorneys mentioned rendered any
service touching the cause of action on which O'Connor
had instituted the suit and so it is throughout the bill—
no averment appears to the effect that Bishop & Cobbs
and Hausmann were employed or ever performed any
service touching the cause of action on which O'Con-
nor's lien had attached. It is true there is an averment
to the effect the claims of Bishop & Cobbs and Hausmann
and O'Connor are indentical and for the same sum and
are not independent, but inferences are not indulged in
aid of the bill on demurrer as they are after judgment,
when no demurrer has been interposed. No one can
doubt that, in order to show a color of right in Bishop
& Cobbs and Hausmann with respect to this fund as
against defendant O'Connor, the bill should contain
some pointed averment to the effect that these attorneys
performed services for Mrs. Harrigan under an agree-
ment with her as to compensation touching the indenti-
cal claim or cause of action on which O'Connor had in-
stituted the suit, for unless such be shown, then no right
of lien is suggested under the statutes in their favor
against the indentical fund. The question as to whether
or not Bishop & Cobbs and Hausmann were entitled to
a lien on the indentical fund as that of O'Connor, if it
appeared they had been employed in the indentical suit,
is not made and will not be decided. It may be that it
is not essential to show a color of right in the adverse
claimants as a usual thing, but it is entirely clear, in
the absence of averment in the bill showing defendants
Bishop & Cobbs and Hausmann to have been employed
or to have rendered services in the case of Mrs. Harri-
gan against plaintiff, that they had no enforcible right
whatever as against defendant O'Connor with respect
to the fund involved, for by operation of law Mary
Harrigan had assigned that fund to O'Connor by her
contract executed at the time of the institution of the
suit, and she certainly could confer no rights on others

touching the same, unless it would be in a case where her original counsel was discharged for good cause, his rights forefeited and a new employment of other attorneys was made about the same subject-matter.

Among other things, a bill of interpleader should show not only the willingness of the stakeholder to render the debt or duty to the rightful claimant, but it should show as well that he is ignorant or in doubt which is the rightful one and is in real danger or hazard by means of such doubt from their conflicting demands. It is not required that the bill should show an apparent title in either of the defendants but if it does show on its face that one of the defendants is certainly entitled, on the facts alleged, to the debt, duty or fund as against the other defendant therein, then it is insufficient on demurrer, for the reason that it reveals no question of doubt about which the aid of the court should be invoked. [4 Pomeroy's Eq. Jur. (3 Ed.), sec. 1328.] We believe it is universally true that where the averments of the bill show one of the defendants is entitled to the fund to the exclusion of the other, a demurrer should be sustained. [Bassett v. Leslie, 123 N. Y. 396; Woodmen of the World v. Wood, 100 Mo. App. 655, 75 S. W. 377; Crass v. Memphis, etc., R. Co., 96 Ala. 447; 11 Ency. Pl. and Pr. 461, 468; Funk v. Avery, 84 Mo. App. 490; Sullivan v. Knights of Father Mathew, 73 Mo. App. 43; 23 Cyc. 25, 26; 4 Pomeroy's Eq. Jur. (3 Ed.), sec. 1328; Starling v. Brown, 7 Bush 164; Story's Eq. Jur. sec. 821.] The rule that a demurrer will lie in such circumstances and the grounds upon which it proceeds are thus stated by numerous authorities: "If the plaintiff states a case in his bill which shows that one of the defendants is entitled to the debt or duty, both defendants may demur; the one upon the ground that plaintiff has a perfect defense at law against his claim, and the other on the ground that plaintiff has neither a legal nor an equitable defense to his claim, and has therefore no right to call upon

him to interplead with a third person who claims without right." [Shaw v. Coster, 8 Paige (N. Y.) 348; Parker v. Barker, 42 N. H. 78, 93; Briant v. Reed, 14 N. J. Eq. 271; Starling v. Brown, 7 Bush. (Ky.) 164; Sprague v. West, 127 Mass 471; Crass v. Memphis, etc., R. Co., 96 Ala. 447.]

It appearing from the bill that plaintiff is liable to respond to defendant O'Connor to the amount of the fund and that defendants Bishop & Cobbs and Hausmann are without right as against him, or clearly without any enforcible right to the exclusion of O'Connor, as the facts are averred, the court very properly sustained the demurrer and the judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Caulfield, J.,* concur.