COMMERCE TRUST COMPANY, Appellant, v. BANK OF WILLOW SPRINGS et al., Respondents.

Springfield Court of Appeals, February 5, 1912.

1. INTERPLEADER: Banks and Banking: Duty to Remit on Collected Draft. Defendant T. ordered a car of corn from a commission company. The corn was shipped by the commission company to itself as consignee and a sight draft with bill of lading attached was drawn upon defendant 'T. and was endorsed to the plaintiff by the commission company and the plaintiff sent the draft to defendant bank for collection. The draft was paid by the defendant T. who subsequently opened the car of corn and found it was not what he had ordered. He then brought an attachment suit against the commission company and summoned the defendant bank as garnishee. Subsequently plaintiff sued defendant bank to recover the amount

Trust Co. v. Bank et al.

of the draft, which the bank had refused to remit, after service of garnishment. Whereupon, defendant T., upon his own application, was made party defendant in this latter suit and then dismissed his attachment suit. Defendant bank filed an answer in the nature of bill of interpleader, setting up that both plaintiff and the other defendant claimed the money collected on the draft. *Held*, that under the pleadings and the uncontradicted facts in the case, there was no case for a bill of interpleader and that it was the duty of the defendant bank to have remitted the amount of the draft to the plaintiff upon its payment and no sufficient excuse is shown for its failure so to do and plaintiff was entitled to recover.

2. ———: **Disinterested Stakeholder.** To sustain a bill of interpleader, the parties holding the money or property must be a disinterested party with no personal interest in the fund and his position must be such that he shall have good reason to believe that he may be liable to be vexed by a suit by either party in case he should pay to the other.

3. **BANKS AND BANKING: Collecting Draft: Duty to Remit Promptly.** Where a draft is sent to a bank for collection and the drawee pays the same without any restrictions or reservations, the bank receives the money as agent for the one who sent it the draft, and the bank has but one duty to perform, and that is to remit the money to the party for whom it has collected it.

4. ———: **Paying Draft Without Restrictions: Payee Barred from Recalling Payment.** Where a drawee of a draft pays the money to the bank to which the draft had been sent for collection, without imposing any restrictions upon such payment, he bars himself from any right to recall the payment.

5. ———: **Collecting Draft: Duty to Remit Promptly: Garnishment: Burden on Collecting Bank.** Where a draft is sent to a bank for collection and after the collection thereof a writ of garnishment was served upon the bank before it had time in the ordinary course of business to remit the money, it is incumbent upon the bank to show that fact, and in the absence of a showing of that kind it would stand in court without any excuse for its failure to remit to the party who sent it the draft for collection.

Appeal from Howell Circuit Court.—*Hon. W. N. Evans,* Judge.

REVERSED AND REMANDED (*with directions*).

*Green & Wayland* and *Gilmore & Brown* for appellant.

(1) The court erred in that it did not render judgment for the plaintiff, because upon the whole record the judgment should have been for the plaintiff. Bank v. Burkham, 32 Mich. 328; Chambers v. Miller, 13 C. B. (N. S.) 125; Andressen v. Bank, 2 Fed. 122; Savings Assn. v. Kehlor, 7 Mo. App. 158; Behring v. Somerville, 63 N. J. L. 568; Fegan v. Railroad, 9 N. D. 30; Levy v. Terwilliger, 10 Daly (N. Y.) 194; Boaz v. Updegrove, 5 Pa. St. 516; Guild v. Baldridge, 2 Swan (Tenn.) 295; Richey v. Clark, 11 Utah, 467; Robinson v. Reynolds, 2 Q. B. 196; Thiedeman v. Goldschmidt, 1 De G. F. & J. 4.

*N. B. Wilkinson, J. N. Burroughs* for respondent.

(1) This being an executory contract, the completion of the sale and purchase was not completed by payment of the money in to the Bank of Willow Springs, and securing the bill of lading by B. F. Thomas; this being only one of several contemporaneous act in the closing of the matter. The right of inspection and acceptance being a part of the delivery of the corn. Milling Co. v. Stanley, 132 Mo. App. 308. (2) As to this money after it was paid into the bank by defendant Thomas, plaintiff stood in no better position toward it than the Adams Commission Co. Bank v. White, 65 Mo. App. 677.

COX, J.—B. F. Thomas is a miller of Willow Springs, Missouri, doing business under the name of Willow Springs Mills and under that name purchased a carload of kiln dried corn for milling purposes from G. Clinton Adams of Kansas City, Missouri, doing business under the name of Adams Commission Company. Adams shipped the corn to Adams Commission

Trust Co. v. Bank et al.

Company at Willow Springs, then drew a sight draft upon Willow Springs Mills, attached bill of lading for the corn thereto and endorsed the draft to plaintiff and the same was deposited in plaintiff bank to the credit of Adams Commission Company. The plaintiff then sent the draft with bill of lading attached to defendant, Bank of Willow Springs, for collection. The draft was presented to Thomas and paid by him and the draft and bill of lading were then delivered to him by the Bank of Willow Springs. Thomas then opened the car of corn and upon inspection found that it was not kiln dried corn such as he had ordered and immediately notified Adams Commission Company that he would not accept the corn and demanded a return of the money he had paid. No demand for the return of the money was made upon the Bank of Willow Springs but instead Thomas brought suit by attachment in the Howell County Circuit Court against the Adams Commission Company and summoned the Bank of Willow Springs as garnishee. The Bank of Willow Springs retained the money received on the draft from Thomas until after service of garnishment and then refused to remit. Plaintiff brought this suit to recover the same. After service in this case the defendant Thomas filed his application to be made a party defendant in this suit which was sustained and an order made permitting him to appear as a party defendant in this case. After that order was made, Thomas dismissed his attachment suit and filed an answer in this case setting up the facts as to the purchase of the corn from the Adams Commission Company and that he had, upon discovery of the fraud, rescinded the contract of purchase and demanded from Adams Commission Company a return of the money paid. That the draft was endorsed to plaintiff by Adams Commission Company. That he was not permitted to examine the corn until he had paid the draft and asked judgment that the money be returned to him by the

Bank of Willow Springs. The defendant, Bank of Willow Springs, answered, admitting that it had the proceeds of the draft paid by Thomas but alleged that both plaintiff and Thomas were claiming the same and asked to be permitted to pay the money into court and to be discharged. Plaintiff moved to strike out the answer of Thomas. Demurred to the answer of the Willow Springs Bank and filed a motion for judgment on the pleadings. All these were overruled. A replication was then filed and trial had before the court. The court found that defendant, Thomas, was entitled to a return of the money and rendered judgment that the Willow Springs Bank pay it to him or if the bank had paid it to the clerk of the court that the clerk pay it to him. Plaintiff has appealed.

The first contention of appellant is that no case for a bill of interpleader is stated. That it is entitled to judgment against the Bank of Willow Springs on the pleadings and on the admitted facts. There was no controversy as to the facts as above stated and the defendant, Bank of Willow Springs, knew all the facts and the question presented is whether on these facts the Bank of Willow Springs could sustain a bill of interpleader. If it could not then plaintiff is entitled to a judgment against it for the money it collected for plaintiff.

To sustain a bill of interpleader, the party holding the money or property must be a disinterested party with no personal interest in the fund and his position must be such that he shall have good reason to believe that he may be liable to be vexed by a suit by either party in case he should pay the money to the other party. [Supreme Council of the Legion of Honor v. Palmer, 107 App. 157, 80 S. W. 699; United Rys. Co. v. O'Connor, 153 App. 128, 132 S. W. 262.]

The draft in question was endorsed to plaintiff and the plaintiff was, therefore, presumably its owner and there was no substantial evidence in this case con-

tradicting this presumption and the draft was sent by plaintiff to the Bank of Willow Springs for collection. Defendant Thomas on being notified that the draft was there paid it with no reservation. This payment, undoubtedly, paid the draft and extinguished it. In that transaction the Bank of Willow Springs was the agent of plaintiff and when the money was paid to it, it received it as agent for the plaintiff and upon its receipt and the delivery by it to Thomas of the draft and bill of lading, the relation of the Bank of Willow Springs and Thomas ceased and the bank then had but one duty to perform and that was to remit the money to plaintiff for whom it had collected it. Thomas had paid the money without imposing any restrictions and by doing so, he cut himself off from any right to recall it. This the Bank of Willow Springs knew, and yet it did not remit the money to plaintiff but kept it until served with garnishment in the attachment proceeding and then sought to step out and force plaintiff to litigate with Thomas its right to the money collected for plaintiff. It may be well enough to note in this connection that there was no allegation of insolvency or any other fact pleaded to call for the interposition of a court of equity but the right of Thomas to appear as a party defendant in this case and the right of defendant, Willow Springs Bank, to assume the position of an interpleader both depend upon the bare fact that after discovering that the corn was not what he ordered, Thomas had the right to recall from the Willow Springs Bank the payment he had made to it for plaintiff and that by starting an attachment suit he had placed the Bank of Willow Springs in such a position that made it necessary for it to assume the role of an interpleader in order to protect itself. We do not think so, but on the contrary we think it was the plain duty of the Bank of Willow Springs as soon as the money was paid to it to remit to plaintiff. This the Bank of Willow Springs did not do but retained

the money until Thomas could start an attachment suit and secure service of garnishment upon it. What length of time elapsed between the receipt of the money by the Bank of Willow Springs and the service of the garnishment does not appear, but necessarily some time would elapse, and it is clear that when the money was paid by Thomas to the Bank of Willow Springs it was the duty of that bank to remit to plaintiff. If the garnishment was served before the Bank of Willow Springs, in the ordinary course of business, had an opportunity to remit the money, it was incumbent upon the Bank of Willow Springs to show that fact and in the absence of a showing of that kind it stands in court without any excuse for its failure to remit to plaintiff the money collected for it. On the admitted facts the judgment should have been for the plaintiff. In so holding, however, we do not mean to be understood as passing upon any question relating to the right of defendant Thomas to recover from Adams or plaintiff the money that he paid to the Bank of Willow Springs for plaintiff. All we hold in relation to that question is that he cannot litigate that question in this case but will be remitted to his separate action for that purpose. Judgment reversed and cause remanded with directions to enter judgment for plaintiff against defendant, Bank of Willow Springs, for the amount of the draft with interest as prayed by plaintiff. All concur.